UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| GEORGE ANTHONY DALLAS, | ) | CASE NO. 4:06 CV2587 |
| | ) | |
| Petitioner, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) |  AND ORDER |
| T.R. SNIEZEK, | ) | |
| | ) | |
| Respondent. | ) | |

Pro se petitioner George Anthony Dallas filed the above-captioned petition for a writ of habeas corpus under 28 U.S.C. § 2241 against Warden T.R. Sniezek at the Federal Correctional Institution in Elkton, Ohio ("F.C.I. Elkton"). Mr. Dallas, who is incarcerated at FCI Elkton, is not a citizen of the United States. He claims that because aliens, like himself, are not eligible for placement in a Residential Reetnry Center (RRC), their rights are being violated under the Equal Protection Clause. For the reasons stated below, the petition is denied and this action is dismissed pursuant to 28 U.S.C. § 2243.

*Background*

Mr. Dallas does not provide any details regarding his nationality, the length of prison term or the country to which he is subject to deportation. He does state that he has exhausted his administrative remedies regarding the issue before this court. In that regard, he attaches a copy of National Inmate Appeals Administrator Harrell Watts's Response to the petition. Mr. Watts explained that "[m]ost programs such as an RRC placement provide for a smooth transition for inmates who will be returning to a community within the United States. In most instances, RRCs are in close proximity to the inmate's release destination. As a citizen of another country, you will

not be releasing to a community within the United States." (Letter from Watts to Dallas of 9/20/06, at 1.) It is Mr. Dallas's opinion that the BOP's response indicates that respondent's " violation of the equal protection clause would not be corrected, albeit it was actually conceded to." (Pet. at 1.)

In support of his equal protection argument, Mr. Dallas maintains that he is similarly situated to prisoners who are permitted to "re-enter" and "actually work in the community, own and operate a car, shop the regular stores as the rest of the free world, obtain weekend passes to visit families, and in essence live half-way to freedom simply because one still has to maintain the rules and regulations promulgated by the Federal Bureau of Prison." (Pet. at 2.) He seeks what he characterizes as a "six-month early release, . . . 'treate [sic] transfer' of sorts so that the alien could also begin to readjust in his own society." Id.

Petitioner claims that his ineligibility for placement in a RRC based on his alien status violates the Equal Protection Clause. He claims that respondent's practice of permitting "similarly situated" non-alien prisoners who reach their ten percent date to be placed in RRCs when alien prisoners cannot is a violation of the Constitution.

*28 U.S.C. § 2241*

Claims seeking to challenge the execution or manner in which the sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241. Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998)(citing United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991)); Wright v. United States Bd. of Parole, 557 F.2d 74, 77 (6th Cir.1977). Therefore, Mr. Dallas's petition against Warden Sniezek, his custodian at the time he filed this petition, is properly before this court.

*Equal Protection Violation*

Under the Equal Protection Clause, similarly situated individuals must be treated the same. If similarly situated individuals are treated differently, the individual challenging the classification, absent the implication of a suspect class, must be able to show the government was without a rational basis for the treatment. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985); Romer v. Evans, 517 U.S. 620 (1996).  Here, Mr. Dallas does not implicate a suspect class. Rather, he claims that similarly situated persons, that is alien inmates of the BOP, are treated differently.[1]  He points to the exception provided for non-alien inmates that allows them to serve the final ten percent of their sentences in a RRC or Community Corrections Center.  See 18 U.S.C. §3624.[2]  The BOP explained that "[u]ntil such time that the Bureau of Immigration and Customs Enforcement (ICE) determines that you are not subject to deportation, staff will review your appropriateness for community-based programs."  (Letter from Watts to Dallas of 9/20/06, at 1.) Therefore, it is clear Mr. Dallas is arguing on behalf of an alien class of prisoners who are subject to deportation upon their release from prison.

The first step in assessing Mr. Dallas's equal protection claim is to determine the

---

[1]Mr. Dallas never argues that there is "no rational basis"for the respondent's treatment of alien prisoners.  He simply asserts that the practice of making them eligible for placement in CCCs is a blatant violation of the Equal Protection Clause.

[2]While Mr. Dallas does not cite section 3624 in his petition, he does seek early release six months prior to the end of his sentence.  Inasmuch as the Sentencing Reform Act provides that "[t]he Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community" 18 U.S.C. § 3624(b), the court presumes this is the "exception" for which aliens are ineligible.

level of scrutiny that this court should apply to the §3624 exemptions. While heightened scrutiny may be applied to distinctions that individual states make regarding aliens, the Supreme Court has made it clear that the scope of judicial inquiry is considerably narrower when the federal government takes action in the area of immigration and naturalization. Fiallo v. Bell, 430 U.S. 787, 792 (1977). This deference is based on the court's understanding that "the power to expel or exclude aliens" is "a fundamental sovereign attribute" and that this power is most appropriately "exercised by the government's political departments." Shaughnessy v. Mezei, 345 U.S. 206, 210 (1953).  As Justice Powell explained in Fiallo,

> decisions in these matters may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary, and the reasons that preclude judicial review of political questions also dictate a narrow standard of review of decisions made by the Congress or the President in the area of immigration and naturalization.

Fiallo, 430 U.S. at 796(citing Mathews v. Diaz, 426 U.S. 67, 81-82 (1976)).  Therefore, any distinctions made by the federal government between aliens and non-aliens receive only rational basis scrutiny.

Under rational basis scrutiny, a statute is "accorded a strong presumption of validity" and will be upheld if "any reasonably conceivable state of facts" could demonstrate that the statute is rationally related to a legitimate government purpose. Heller v. Doe, 509 U.S. 312, 319-20 (1993). As Justice Kennedy observed in Heller, "[a] classification does not fail rational-basis review because it 'is not made with mathematical nicety or because in practice it results in some inequality.' The problems of government are practical ones and may justify, if they do not require, rough

accommodations...." Id., at 321 (citing Metropolis Theater Co. v. Chicago, 228 U.S. 61, 69-70 (1913)(citations omitted)).

Here, the BOP notes that most reentry centers are located near a prisoner's release destination. Because alien prisoners are citizens of another country, and facing potential deportation, the BOP cannot not release them into a resident community within the United States. Moreover, because the BOP is responsible for releasing any alien prisoner subject to deportation into the custody of the Department of Homeland Security at the end of their prison term, there is an increased risk that the BOP could lose physical custody of that prisoner by releasing him to a less restrictive environment in the community before his prison term expires. Thus, unless the prisoner's deportable status changes before his prison terms ends, as Mr. Watts explained to Mr. Dallas, there is no indication that the BOP would be willing to assume the risk of losing physical custody of that inmate before his prison term ends. Such a differentiation between alien and non-alien prisoners therefore has a rational basis.

Based on the foregoing, the petition is dismissed pursuant to 28 U.S.C. § 2243.[3] The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

S/Peter C. Economus - 3/1/07
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE

---

[3] An order dated December 26, 2006 was entered in this case indicating the court could not make a determination that the petition lacked merit on its face, and setting forth a briefing schedule. That order was entered in error, and is hereby vacated.

5